NUMBER 13-02-557-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG
___________________________________________________________________

IN RE: THE ESTATE OF VELMA LEE ROBINSON, DECEASED
___________________________________________________________________

On appeal from the County Court of Jackson County, Texas.
__________________________________________________________________

O P I N I O N

Before Justices Rodriguez, Castillo, and Wittig



Opinion by Justice Rodriguez

         This is a probate matter concerning the qualification and appointment of a co-executor of the estate of Velma Lee Robinson (the Estate). By one issue, appellant,
Garland Sandhop, Sr., complains of the sufficiency of the evidence to support his
disqualification as an executor of the Estate. We reverse.
I. Background
         Following Robinson's death, the trial court admitted her 1995 will to probate,
the primary beneficiaries of which were family members, including the Ayers and
Cavitt families.


 Appellee, Mary H. Thedford,


 and others filed a will contest alleging
Robinson lacked testamentary and mental capacity when she signed the 1995 will and
related estate documents and was unduly influenced. The will contestants offered
Robinson's 1983 will for probate, the primary beneficiary of which was the Velma Lee
and John Harvey Robinson Charitable Foundation (the Foundation). Appellant did not
join as a plaintiff in the will contest. He was, however, identified as a necessary party
and filed a pro se general denial. After a jury trial, Robinson's 1995 will was set aside
as invalid, and her 1983 will was admitted to probate.



         Following the successful will contest, appellant, a named co-executor of the
1983 will, filed a motion to be appointed co-executor of the estate. Appellee, also
named as a co-executor in the 1983 will, filed a motion to disqualify appellant.


 
Appellee alleged appellant was unsuitable to serve and should be disqualified because: 
(1) appellant represented the defendants who were promoting the 1995 will in the will
contest; (2) appellant took a position in the will contest in support of the 1995 estate
plan, which was directly opposed to supporting the 1983 estate plan; (3) appellant
was duty bound to support the 1983 estate plan but did not do so and testified that
it was not his responsibility to do so; (4) appellant was a material fact witness in the
will contest in favor of and in support of the 1995 estate plan; and (5) appellant's
position was in inherent conflict with his duties as independent co-executor under the
1983 will and/or co-trustee of any trust executed by Robinson prior to 1995.
         The trial court heard appellee's motion to disqualify and appellant's motion to
be appointed co-executor. Appellant was called as the only witness. Documents
admitted into evidence for purposes of the hearing included the following: (1)
appellant's answer and amended answer in the will contest; (2) two option
agreements; and (3) the Secretary of State's certification of the court-ordered
reinstatement of the Foundation. After hearing the application and motion and
considering the pleadings, evidence, arguments and authorities cited, the trial court
found appellant unsuitable to serve as co-executor of the Estate. The court ordered
appellant disqualified and denied his application for appointment. Appellee was
appointed as the sole dependent executor with bond.


 The court entered findings of
fact and conclusions of law. This appeal ensued.
II. JURISDICTION
         We first determine, sua sponte, our jurisdiction to consider this appeal. N.Y.
Underwriters Ins. Co. v. Sanchez, 799 S.W.2d 677, 678 (Tex. 1990). The supreme
court has set out the following test for determining whether an order arising from
probate proceedings is final or interlocutory:
If there is an express statute, such as the one for the complete heirship
judgment, declaring the phase of the probate proceedings to be final and
appealable, that statute controls. Otherwise, if there is a proceeding of
which the order in question may logically be considered a part, but one
or more pleadings also part of that proceeding raise issues or parties not
disposed of, then the probate order is interlocutory.

Crowson v. Wakeham, 897 S.W.2d 779, 783 (Tex. 1995). In In re Estate of Vigen,
970 S.W.2d 597, 599 (Tex. App.–Corpus Christi 1998, no pet.), we held that an
order settling someone's rights as an executor was a final, appealable order. Id.; see
Spies v. Milner, 928 S.W.2d 317, 318-19 (Tex. App.–Fort Worth 1996, no writ)
(order denying Spies's application found to be final, appealable order).   
         In the present case the trial court found appellant to be unsuitable to serve as
independent co-executor of the Estate. The court disqualified appellant from serving
and denied his application to be appointed co-executor. The trial court's order clearly
settled appellant's claim to be a co-executor. There are no ongoing proceedings
relevant to this issue, and there are no pleadings that are part of that proceeding that
concern undisposed-of issues or parties. See Crowson, 897 S.W.2d at 783. Thus,
we conclude that the order upon which this appeal is based is final as to appellant's
rights as a co-executor and, as such, is an appealable order.
III. DISQUALIFICATION
A. The Law
         Section 77 of the probate code provides priority in the grant of letters
testamentary to the executor named in a will if that person is qualified to act. See
Tex. Prob. Code Ann. § 77(a) (Vernon 2003). However, a person may be disqualified
to serve as an executor if the court finds the person "unsuitable." Id. § 78(e). When
an applicant is among those named in the probate code as a person entitled to priority,
as in this instance, the party opposing the appointment has the burden of establishing
the applicant's disqualification. Monson v. Betancourt, 818 S.W.2d 449, 500 (Tex.
App.–Corpus Christi 1991) (orig. proceeding) (citing Powell v. Powell, 604 S.W.2d
491, 493 (Tex. Civ. App.–Dallas 1980, no writ)). Therefore, appellee, who opposed
appellant's motion, had the burden of proving appellant was unsuitable to be co-executor of the Estate.
         Unsuitability is not defined in the probate code, and case law has recognized no
comprehensive, discrete explanation delineating attributes that make someone
unsuitable under the probate code. See Dean v. Getz, 970 S.W.2d 629, 633 (Tex.
App.–Tyler 1998, no pet.) (citing Boyles v. Gresham, 158 Tex. 159, 163, 309 S.W.2d
50, 53-54 (1958) and Olguin v. Jungman, 931 S.W.2d 607, 610 (Tex. App.–San
Antonio 1996, no writ)). While there is no "bright line" test to be applied, generally
a person claiming ownership of property, to the exclusion of the estate, is deemed
unsuitable because of the conflict of interest between the person and the estate, while
a person making a claim within the probate process (i.e., claiming under the will or
attempting to collect a debt from the estate) is not deemed unsuitable. See In the
Estate of Foster, 3 S.W.3d 49, 55 (Tex. App.–Amarillo 1999, pet. denied); Olguin,
931 S.W.2d at 610. The Dean Court reviewed the following cases that guide the
courts in making that determination:
An administrator was disqualified as "unsuitable" when the bank in which
he owned stock claimed certain of the estate's assets as its own
property. Haynes v. Clanton, 257 S.W.2d 789, 792 (Tex. Civ. App.–El
Paso 1953, writ dism'd by agr.). An individual was disqualified from
serving as administrator of the estates of both a husband and his wife
wherein each estate had adverse claims to the same insurance proceeds. 
Hitt v. Dumitrov, 598 S.W.2d 355, 356 (Tex. Civ. App.–Houston [14th
Dist.] 1980, no writ). A surviving spouse was found unsuitable because
she claimed property of the husband's separate estate as community
property. Ayala v. Martinez, 883 S.W.2d 270[, 272] (Tex App.–Corpus
Christi 1994, writ denied). A finding by the trial court that a surviving
wife was unsuitable as the representative of her husband's estate was
affirmed by this court where her appointment "would be inimical to the
interests of the Estate." Inimical was defined as adverse, antagonistic,
and hostile. Formby v. Bradley, 695 S.W.2d 782, 785 (Tex. App.–Tyler
1985, writ ref'd n.r.e.). Family discord has also been grounds for
disqualifying an applicant. Spies, 928 S.W.2d at 319. As the court
stated in Hitt, "each estate should have a representative that will assume
the role of an advocate to achieve the best possible advantage for the
estate." Hitt, 598 S.W.2d at 356. If one has personal interests that are
so adverse to those of the estate or the beneficiaries thereof that both
cannot be fairly represented by the same person, then that person is not
a proper person to administer the estate. Bays [v. Jordan], 622 S.W.2d
[148,] 149 [(Tex. App.–Fort Worth 1981, no writ)]; citing 18 A.L.R.2d
635 (1951).
Dean, 970 S.W.2d at 633-34. In Dean, as executrix the daughter would have to
litigate against her mother, brother, and sisters; would have to select marital deduction
assets to her own detriment or to the detriment of the estate; and would have to
accuse her own brother, the former executor, of possible wrongdoing. See id. at 634. 
The court, thus, concluded the daughter was not suitable to serve as the executrix of
the estate. See id.
         In In re Estate of Vigen, this Court upheld a finding of unsuitability and
disqualification of a named executor where evidence established a conflict of interest
between the executor and the estate based on the executor's claim against the estate
for a $12,000 check. In re Estate of Vigen, 970 S.W.2d at 600-02. The
circumstances surrounding the drafting of the check were open to question, and the
claim was being pursued in separate litigation. Id.; cf. Boyles, 309 S.W.2d at 54
(good-faith creditor of estate not necessarily unsuitable to serve as administrator but
may be found unsuitable when claim against estate is controversial); In re Foster, 3
S.W.3d at 56 (independent executor named in will not unsuitable as matter of law
simply because he has claim against estate); Olguin, 931 S.W.2d at 609-10 (trustee
of charitable remainder trust not unsuitable to serve as independent executor of
income beneficiary’s estate); In re Estate of Roots, 596 S.W.2d 240, 244 (Tex.
App.–Amarillo 1980, no writ) (executor's charging or intending to charge excess
compensation does not bear on suitability to serve). Finally, the Spies Court found
that there was no abuse of discretion in finding the daughter of the testator
"unsuitable" because she had difficulty dealing with professionals, was a difficult
witness, changed her answers when pressed, and spent money from mother's bank
account without permission from the guardian of mother's estate, and because there
was discord and animosity between the daughter and other relatives involved in the
probate proceeding. Spies, 928 S.W.2d at 319.
B. Standard of Review
         The trial court has broad discretion in finding a proposed executor "unsuitable." 
Dean, 970 S.W.2d at 633. An abuse of discretion standard is the proper standard of
review on appeal. See In re Estate of Vigen, 970 S.W.2d at 600; In the Estate of
Foster, 3 S.W.3d at 54; Olguin, 931 S.W.2d at 612. To constitute an abuse of
discretion, the finding must be arbitrary or unreasonable. In re Estate of Vigen, 970
S.W.2d at 600; Dean, 970 S.W.2d at 633. To prove the trial court abused its
discretion, appellant must show that "the court acted without reference to any guiding
rules and principles." Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985); In re Estate of Vigen, 970 S.W.2d at 600; Dean, 970 S.W.2d at 633.
         Appellant's issues on appeal challenge the sufficiency of the evidence. 
However, as in Zorilla v. Wahid, 83 S.W.3d 247, 252 n.1 (Tex. App.–Corpus Christi
2002, no pet.), we follow the majority of courts in concluding that "when the trial
court's ruling on the merits is reviewed under an abuse of discretion standard, the
normal sufficiency of the evidence review is part of the abuse of discretion review and
not an independent ground for reversal." Id. (citing, e.g., Crawford v. Hope, 898
S.W.2d 937, 940-41(Tex. App.–Amarillo 1995, writ denied); Thomas v. Thomas, 895
S.W.2d 895, 898 (Tex. App.–Waco 1995, writ denied); In re Driver, 895 S.W.2d 875,
877 (Tex. App.–Fort Worth 1995, no writ)); see Handley v. Handley, 112 S.W.3d
904, 907 (Tex. App.–Corpus Christi 2003, no pet.) (division of property reviewed for
abuse of discretion). 
         In reviewing legal sufficiency evidence issues, we consider only the evidence
and inferences that tend to support the finding and disregard all evidence and
inferences to the contrary. Southwest Key Program, Inc. v. Gil-Perez, 81 S.W.3d 269,
274 (Tex. 2002); see Lenz v. Lenz, 79 S.W.3d 10, 19 (Tex. 2004). When a party
attacks the legal sufficiency of an adverse finding on an issue on which he did not
have the burden of proof, as in this case, he must demonstrate on appeal that there
is no evidence to support the adverse finding. Croucher v. Croucher, 660 S.W.2d 55,
58 (Tex. 1983); Hickey v. Couchman, 797 S.W.2d 103, 109 (Tex. App.–Corpus
Christi 1990, writ denied). When we review a challenge to the factual sufficiency of
the evidence, we consider all of the evidence. Ortiz v. Jones, 917 S.W.2d 770, 772
(Tex. 1996); Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989)
(per curiam). Because appellant, in this case, did not have the burden of proof at trial,
he must demonstrate that the evidence is insufficient to support the adverse finding. 
See Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam) (citing
Croucher, 660 S.W.2d at 58); Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co., 766
S.W.2d 264, 275-76 (Tex. App.–Amarillo 1988, writ denied).
C. Unsuitability
         By one issue, appellant complains of the sufficiency of the evidence to support
the court's finding that appellant is unsuitable to serve as executor of the Estate. 
Appellant asserts appellee has failed to satisfy her burden under probate code section
78(e) to prove disqualification. See Monson, 818 S.W.2d at 500. He argues appellee
failed to establish any of her asserted bases for disqualification, including conflict of
interest, an adversary relationship, hostility, an inability to perform his duties if
appointed co-executor, and a duty to investigate or contest the 1995 will.
1. Conflict of Interest
         By his first sub-issue, appellant contends there is no showing he had a conflict
of interest that would disqualify him from serving as executor. Appellant asserts
appellee failed to prove any conflict of interest between appellant as accountant for
the Ayers and Cavitt families who were proponents of the 1995 will, and appellant as
executor of the 1983 will.



         Testimony provided by appellant at the hearing established he had performed,
and hoped to continue to perform, accounting services for members of the Ayers and
Cavitt families and their business entities. Appellant also served as the accountant for
partnerships set aside by the trial court's judgment in the will contest. Appellant
testified that his duty as an accountant is to keep his client's financial information
confidential. See Parker v. Carnahan, 772 S.W.2d 151, 158 (Tex. App.–Texarkana
1989, writ denied) (accountants, as skilled tax professionals, are subject to same rules
of liability in practice of their profession as members of other skilled professions and
are measured by standard of care applicable to their profession). Appellant also
testified that his responsibilities as accountant for the Ayers and Cavitts would not
conflict with his serving as executor of the 1983 will, that he has no claim against the
Estate, and that he is not a beneficiary under the 1983 will. Appellee introduced no
controverting evidence.
         While there is evidence to support the court's findings that appellant worked as
an accountant for members of the Ayers family and the Cavitt family since 1996 and
is their current accountant, there is no evidence to support a finding that appellant is
an agent for some members of the Ayers family and the Cavitt family. The record
establishes that appellant provided accounting services, nothing more. See Lone Star
Partners v. Nationsbank Corp., 893 S.W.2d 593, 600 (Tex. App.–Texarkana 1994,
writ denied) (merely engaging accountant does not, absent evidence of control, make
accountant an agent of employer). We conclude, therefore, there is no evidence in the
record to support the court's determination that appellant was an agent for some
members of the Ayers family and the Cavitt family. Moreover, appellant's provision
of accounting services to the Ayers and Cavitt families, under the facts of this case,
does not create a conflict of interest that would disqualify appellant from serving as
executor of the Estate. Case law does not support appellee's argument that such a
business relationship can be the basis for a finding of unsuitability. Thus, a
determination of unsuitability on this basis was an abuse of discretion.
2. Adversary in Will Contest
         By his second sub-issue, appellant contends that the trial court erroneously
found that he chose not to defend the 1983 will and that he supported and assisted
the Ayers and Cavitt families in their efforts to defeat the 1983 will by participating
in strategy discussions and by providing information that assisted them in jury
selection.


 Appellee contends that appellant placed himself in an adversarial position
to the will contestants and should be disqualified as executor.
         The will contest identified appellant as a necessary party because he was named
as a co-trustee of two revocable trusts under the 1983 will. In response, appellant
filed a pro se general denial. Appellant testified he did not understand the effect of his
answer, but was told it was necessary to protect himself. He thought he was denying
his "part in the case" but did not oppose the will contest.
         The evidence establishes that appellant's participation in the will contest
included possessing Robinson's financial information, comprised of twenty to twenty-five boxes, which was available to both sides to the will contest. Appellant looked
over a potential jury list at the request of the attorneys promoting the 1995 will and
told them who he knew and who might not like him. He testified he would have done
the same thing for the attorneys promoting the 1983 will had they asked. Appellant
participated as a fact witness in the will contest where he testified he had insufficient
personal knowledge of Robinson's mental state to form an opinion about her mental
capacity to execute the 1995 will. While appellant sat with the defendants during
closing argument, he acknowledged that he sat on both sides at different times during
the trial. Appellant also testified he would not have said anything to help either side
if it was not true, and he never refused to help lawyers from either side of the contest. 
Appellant explained he sought to remain neutral because he had no basis to take a
position regarding either will. There was no controverting testimony. 
         We conclude that the trial court's findings that appellant supported the position
of the Ayers and Cavitt families in seeking to maintain the probate of a later will and
assisted them in an effort to defeat the 1983 will, are without support in the record. 
Furthermore, the trial court's finding that appellant "chose not to defend" the 1983
will, at a time when he knew he was named as co-executor under the will, is also
unsupported by the evidence. The 1983 will was effectuated as a matter of law when
the 1995 will was found to be invalid. As set out above, appellant testified he had no
basis for taking sides on the issue of whether the 1995 will and other estate
documents were valid, which was the only issue before the court in the will contest. 
Having found insufficient evidence to support the "will contest adversary" findings, we
conclude the trial court abused its discretion if its determination of unsuitability was
made on this basis.
3. Hostility
         By his next sub-issue, appellant contends there was no showing that he was
hostile toward the will contestants or that he changed his sworn testimony in any
meaningful way that showed hostility, such that this could be the basis of his
disqualification.


 First, regarding his sworn testimony, the record reveals the following
differences between appellant's deposition testimony and his trial testimony in the will
contest: (1) appellant testified he had forgotten that certain documents were in his
file, and another time that he never knew they were in his file; and (2) appellant
testified he had no reason to believe appellee was not an honest person, and another
time he had not formed an opinion whether she was a truthful person. Even if we
characterize these differences in testimony as "changes," we cannot conclude they are
the type of changes that would rise to the level of showing that a witness was hostile
or difficult. Cf. Spies, 928 S.W.2d at 319 (no abuse of discretion in finding
"unsuitability" because daughter of testator was difficult witness, changed answers
when pressed, and because there was discord and animosity between daughter and
other relatives involved in probate proceeding).
         Secondly, other evidence allegedly supporting appellee's hostility argument
included the dissolution of the Foundation. Appellant testified he had seen the
dissolution papers, and it was his understanding that the Foundation had been
dissolved by the Secretary of State. Appellant also testified he had no idea whether
he would recognize the validity of the Foundation. He had no "idea how it stands." 
Appellant did not "know the legal aspects of reestablishing the Foundation. If that's
what's finally determined, that's the way the residue will go." Moreover, although
appellee admitted the certificate showing the Foundation's reinstatement into evidence
at the hearing, she did not question appellant about the certification or the
Foundation's reinstatement. Finally, at the hearing appellant testified he had no
antagonism toward appellee, for whom he had performed accounting services for thirty
years. He described his relationship with appellee as good and testified he would be
able to work with her and communicate with her as co-executor of the Estate.
         Based on the above uncontroverted testimony and the testimony and analysis
in the adversary sub-issue above, we conclude there is insufficient evidence to support
the trial court's factual findings regarding appellant's alleged hostility toward the
Estate and appellee. Thus, we conclude the trial court abused its discretion if its
determination of unsuitability was made on the basis of hostility.
4. Performance of Duties as Executor if Appointed
         Appellant next contends there is no showing he would not or could not perform
his duties as executor.


 Appellee argues that appellant is not prepared to accept his
duty to defend the 1983 will.
         Appellant testified he is not an attorney and is not sure what his legal duties will
be as executor, but he will seek legal advice and do whatever is required of him as
executor. He testified he did not know what would happen on appeal of the contest,
but, if appointed, he would seek legal advice as to what his duties were in that regard. 
While appellant stated he hoped to remain neutral with respect to the appeal of the will
contest, he further testified he would do whatever was legally required of him as
executor, including suing his own accounting clients if necessary. Again, this
testimony is uncontroverted. Based on the record evidence, we conclude there is
insufficient evidence to support the trial court's findings related to appellant's ability
to perform his duties as co-executor. Appellee's argument that appellant is not
prepared to accept his duty to defend the 1983 will fails, and the court again abused
its discretion if the disqualification was made on this basis.
5. Duty to Investigate or Contest 1995 Will
         Appellant contends, by his final sub-issue, that there is no showing that he had
a duty to investigate or contest the 1995 will, or, in the alternative, that his failure to
do so would disqualify him. Appellant testified he did not investigate or contest the
validity of the 1995 will because he did not think he had a duty to do so and because
he did not have any reason upon which to base such an investigation or contest. 
Appellee's response to appellant's assertion is that a named executor of an unprobated
will has a duty to investigate or contest the validity of another, later will.
         The Texas Probate Code provides a time period in which an executor must file
an application for the grant of letters testamentary and sets out duties owed by an
independent executor of a probated will. See, e.g., Tex. Prob. Code Ann. §§ 74, 146,
233, 250, 251 (Vernon 2003). The probate code also provides for payment of
necessary expenses and attorneys' fees to an executor who does contest a will. Id.
§ 243 (executor who defends will naming executor or prosecutes any proceeding in
good faith for purpose of having will admitted to probate, entitled to payment of
necessary expenses and attorney's fees out of estate); but see id. §3(r) (executor not
identified as interested person who would have standing to contest will). However,
appellee provides no authority for her argument that appellant, who was a named co-executor in Robinson's 1983 will, had a duty to investigate or contest the 1995 will,
and we find none. Thus, the trial court acted without reference to any guiding rules
and principles, and any disqualification on this basis was an abuse of discretion.
6. Unchallenged Findings of Fact
         Appellee asserts, even if all challenged findings were set aside, the remaining,
unchallenged findings support a finding of unsuitability.


 We have already concluded,
however, that the fact that appellant does accounting work for some members of the
families who advocated the 1995 will and the fact that he may have to take positions
adverse to them constitute no evidence or insufficient evidence of unsuitability, and
there is no authority that supports a position otherwise. Thus, such unchallenged
findings of fact would not support a finding of unsuitability. Likewise, findings that
appellant served as accountant for partnerships that were set aside by virtue of the
court's judgment and the fact that he took the position that the Foundation was
terminated and does not exist, do not constitute evidence of unsuitability. In fact, the
Foundation was dissolved by the 1995 estate plan, and appellant testified he did not
know what its status was at the time of the hearing. As explained above, appellee did
not develop appellant's testimony regarding the status of the Foundation, although the
reinstatement certificate was admitted into evidence. Moreover, unchallenged findings
that the Ayers and Cavitt families were adversaries of Thedford and the 1983 will are
irrelevant to the determination of unsuitability in this case. Thus, appellee's argument
regarding the unchallenged findings fails.
7. Challenged Conclusions of Law
         Having concluded there is insufficient evidence to support the controlling
findings of fact, the trial court's conclusions cannot be supported.


 See Long
Distance Int'l, Inc. v. Telefonos de Mexico, S.A. de C.V., 49 S.W.3d 347, 351 (Tex.
2001) (correct conclusions of law will not require reversal if controlling findings of fact
support a correct legal theory); Mack v. Landry, 22 S.W.3d 524, 528 (Tex.
App.–Houston [14th Dist.] 2000, no pet.) (conclusions of law will be upheld on appeal
if judgment can be sustained on any legal theory supported by evidence).
         Accordingly, having found no bases for the trial court's determination of
unsuitability, we conclude the court acted without reference to any guiding rules and
principles when it disqualified appellant as co-executor of the Estate. See Downer,
701 S.W.2d 238, 241-42 (Tex. 1985); In re Estate of Vigen, 970 S.W.2d at 600;
Dean, 970 S.W.2d at 633. Thus, the trial court abused its discretion. See In re Estate
of Vigen, 970 S.W.2d at 600; Dean, 970 S.W.2d at 633. Accordingly, we sustain
appellant's sole issue.IV. WAIVER OF RIGHT TO BE APPOINTED EXECUTOR
         Appellee asserts the trial court could have found appellant unsuitable because
he waived his right to serve.


 However, the trial court made no finding of waiver. 
See Tex. R. Civ. P. 299 (rule 299 requires finding of fact on all grounds of recovery
and defense in order to form basis of judgment). A judgment cannot be supported by
"implied findings where no element of the ground of recovery has been found by the
trial court." Jack Ritter Inc. Oil Co. v. Fred Bandas and Sons, Inc., 387 S.W.2d 70,
72 (Tex. Civ. App.–Austin 1965, no writ). Moreover, for the reasons discussed
above, even had the trial court made such a finding we would conclude there is no
evidence or insufficient evidence that appellant waived his right to be appointed
executor.
V. SANCTIONS
         Finally, appellee asserts this appeal is frivolous and damages should be awarded
against appellant for pursuing this meritless course. In reviewing a request for
sanctions on the basis that the appeal is frivolous, we must determine whether
appellant had a reasonable expectation of reversal or pursued the appeal in bad faith. 
See Tex. R. App. P. 45; Mercier v. MidTexas Pipeline Co., 28 S.W.3d 712 (Tex.
App.–Corpus Christi 2000, no writ); Diana Rivera & Assocs., P.C. v. Calvillo, 986
S.W.2d 795, 799 (Tex. App.–Corpus Christi 1999, writ denied). In this case, having
concluded appellant's sole issue should be sustained, we must also conclude that
appellant had a reasonable expectation of reversal and pursued the appeal in good
faith. Thus, sanctions are not warranted.
VI. CONCLUSION
         Accordingly, we reverse the order of the trial court and remand the cause for
further proceedings consistent with this opinion.
 

                                                                        NELDA V. RODRIGUEZ
                                                                        Justice

Opinion delivered and filed
this 1st day of July, 2004.