**HAYNES v. CLANTON.**
No. 4932.

Court of Civil Appeals of Texas.
El Paso.

March 4, 1953.

Rehearing Denied April 1, 1953.

Alfred E. Creigh, Jr., Alpine, for appellant.

Morriss, Morriss, Boatwright & Lewis, San Antonio, for appellee.

McGILL, Justice.

This is an appeal from an order of the District Court of Brewster County removing appellant Neville Haynes as Administrator of the estate of John Clanton, deceased. While other questions were presented in the trial court, the sole question on this appeal is narrowed as to whether the recital of fact in the court's order, which we accept as true, disqualified appellant from serving as administrator of the estate, and constituted a legal ground for his removal. Appellant's two points present only this question. The recital is:

"* * * it appearing to the Court that there is a conflict of interest on the part of said Neville Haynes, individually and as administrator of the estate of John Clanton, deceased, by reason of the claim of First National Bank of Alpine (of which said Haynes is a stockholder) to all of the assets of the estate of John Clanton, deceased, as asserted in Cause No. 2652, styled First National Bank of Alpine, et al, v. Neville Haynes, as administrator of the estate of John Clanton, deceased, et al, now pending in this Court, and that by reason of said conflict of interest said Neville Haynes is disqualified from performing the duties of his trust as said administrator:"

The facts are practically uncontroverted. John Clanton, a resident of Brewster County, died intestate in said County on February 3, 1950. On February 28, 1950, on application of First National Bank of Alpine, in which appellant Neville Haynes joined, appellant was appointed temporary administrator of Clanton's estate by the County Court of Brewster County. After statutory notice and a waiver of her preferential right to administer the estate sign-

ed by appellee, who was the widow of deceased, on May·8, 1950, the appointment of appellant as temporary administrator was made permanent by order of the County Court of Brewster County, and appellant thereafter duly qualified as such administrator. On August 6, 1951, this proceeding was instituted by motion of appellee in the County Court of Brewster County, to remove appellant as administrator of the estate. After hearing on September 7, 1951, the court overruled such motion and appellee duly perfected her appeal to the District Court of Brewster County. After trial in the District Court on September 17, 1952, the court entered the order removing the appellant as administrator of the estate. From this order this appeal is prosecuted.

It is undisputed that at the time appellant was appointed temporary administrator he was a director in the First National Bank of Alpine and owned about twenty-one shares of stock in the bank; that he remained as such director until October 1, 1951, when he resigned; that after his appointment he acquired other stock of the bank so that at the time of the trial he owned eighty-four or eighty-five shares of its stock, the total number of shares of which was 750, so that appellant owned approximately eleven per cent of the total stock. On February 28, 1951, the bank filed suit in the District Court of Brewster County against appellant as administrator of the estate of John Clanton, deceased, and on February 20, 1952, filed its second amended petition, on which the case was tried in this suit.

There can be little if any doubt that the primary purpose of this suit was to recover all the assets of the estate which were in possession of the administrator, and the proceeds of property sold by him, as the property of the bank, the theory being that all the property in the possession of the administrator, as well as that sold by him, had been acquired by the deceased with funds embezzled by him from the bank, and hence he and his administrator held such property in trust for the bank. This was clearly the purpose of the suit contemplated as stated in the letter of the bank's attorney to the appellant and his attorney under date of October 30, 1950. Appellant testified that this was the first notice he had that the bank was making such claim, but he did admit that before that he knew the bank was claiming title to some of the property which came into his hands as administrator. The primary purpose of the suit is made crystal clear by the allegations of the second amended petition:

"By reason of the facts herein and in Exhibit 'B' alleged, a constructive trust in all said assets was created in favor of Plaintiff Bank and Plaintiffs herein are entitled to recover of and from and to the fixing of a claim against the Estate of John Clanton, Deceased, in the amount of $250,662.72, secured by an equitable lien upon all assets of said estate in the hands of the Defendant Neville Haynes, Administrator.

IV.

"Defendant, Neville Haynes, Administrator of the Estate of John Clanton, Deceased, has taken possession of the personal property in the hands of John Clanton on the date of his death including the property described in Exhibit 'B' attached hereto and made a part hereof, which plaintiffs, in any event, own by reason of the facts herein and in said Exhibit 'B' alleged which facts as set out in Exhibit 'B' are hereby referred to and made a part hereof as though fully written herein and which facts, in essence, create a constructive trust in the property therein described in favor of Plaintiff Bank and show that said Clanton, during his lifetime, held and said defendant administrator of his estate now holds said property in trust for Plaintiff Bank herein. Although often requested, said Neville, Haynes, in his capacity as such administrator, has failed and refused and still fails and refuses to deliver up possession of said personal property to Plaintiffs, but on the contrary, has sold certain portions thereof, which he likewise holds in trust for Plaintiff Bank, and, although often requested by Plaintiffs, has likewise failed and refused and still fails and refuses to deliver up

to plaintiffs the proceeds of the sale thereof."

and by the prayer that plaintiffs have

"2. Judgment declaring a constructive trust in favor of plaintiffs herein as against the defendant Neville Haynes, administrator of the estate of John Clanton, Deceased, for all assets, furniture, equipment and property coming into the hands of defendant, Neville Haynes, Administrator, and purchased with funds of plaintiffs.

"3. Judgment against defendant, Neville Haynes, administrator, and all defendants herein, for the title and possession of such personal property in the hands of said defendant, Neville Haynes, administrator of the estate of John Clanton, Deceased, as may have been purchased or improved with funds of plaintiff Bank or the proceeds of the sale of any part thereof in the hands of such defendant Administrator or *in the alternative,* judgment against Neville Haynes, Administrator, decreeing and fixing such equitable liens and the amount thereof against any and all personal property and assets (or the proceeds from the sale thereof) coming into his hands as such administrator as plaintiffs may show themselves entitled and foreclosing the same as against all defendants herein." (Emphasis ours.)

Appellant contends that there is no statutory authority for his removal because he is personally interested in the lawsuit between the bank and him as administrator of the estate, and that on the contrary under Art. 3357, R.C.S. persons most interested in the estate are given a preferential right to administer.

■ It has been said that the provisions of our probate statutes do not prevent the court from acting upon other legal obstacles which may appear to granting letters or upon which the court may act to remove an administrator. Administration of Estates in Texas, 2 Ed., Simpkins, p. 204, Chap. 37, citing Stevens v. Cameron, 100 Tex. 515, 101 S.W. 791; and Journeay v. Shook, 105 Tex. 551, 152 S.W. 809. While

in Stevens v. Cameron, Judge Gaines did say

"It does not follow, in any event, as we think, that other legal obstacles may not exist to an appointment as administrator than that mentioned in article 1910 [Vernon's Ann.Civ.St. art. 3353]." [100 Tex. 515, 101 S.W. 792.]

he based his decision on Art. 2027, which was similar to our present statute, Art. 3467, and pointed out that it would lead to an absurdity to make it the duty of the court to appoint an administrator and then remove him. Journeay v. Shook dealt with an executor rather than an administrator, and is distinguishable on that ground.

■ However, we do not have to go outside of our statutory authority. Art. 3467, supra, provides that an executor or an administrator may be removed by the County Judge on his own motion or on complaint of any person interested in the estate after being cited,

" * * * When he becomes of unsound mind, or from any other cause he is *incapable of performing the duties of his trust.*" (Emphasis ours) (Sec. 4)

As used in this statute the word "incapable" cannot be limited in its application to the mere case of mental or physical incapacity. It must be understood to include the idea of unfitness and unsuitableness. Vol. 20, Words and Phrases, Incapable, p. 393, citing Drew's Appeal, 58 N.H. 319, 520. See also Price's Administrator v. Price, 291 Ky. 211, 163 S.W.2d 463, 465, where the statute under consideration was practically identical with our statute and the court held that a representative who was asserting

" * * * an adverse, incompatible and hostile interest in himself to that of the estate * * * was incapable of discharging the trust."

Exhaustive annotations as to personal interest of an executor or administrator, adverse or conflicting with those of other persons interested in the estate as ground for revocation of letters or removal, may be found in 119 A.L.R. 306, and 18 A.L.R.2d 633. In 119 A.L.R. page 307, it is said:

"* * * it may be stated as being well settled that the fact that an administrator or executor claims a personal interest in the assets of his decedent's estate adverse to or conflicting with the claims of other persons interested in such estate may, be ground for his removal or for revocation of his letters."

and in 18 A.L.R.2d p. 635:

."Clearly, one whose personal interests are so adverse to those of the estate or the beneficiaries thereof that both cannot be fairly represented by the same person is not a proper person to administer the estate. Re S. Marks & Co.'s Estate (1913) 66 Or. 340, 133 P. 777; Re Elder (1938) 160 Or. 111, 83 P.2d 477, 119 A.L.R. 302; Re Watkins's Estate (1944) 114 Vt. 109, 41 A. 2d 180, 157 A.L.R. 212.

"And that the rule that an adverse interest may disqualify a person for appointment as administrator of a decedent's estate is not confined to cases involving either bad faith or litigation outside the probate court. Re Watkins's Estate (1944) 114 Vt. 109, 41 A. 2d 180, 157 A.L.R. 212."

See also 21 Am.Jur. p. 461, Sec. 156, and 33 C.J.S., Executors and Administrators § 90(e), p. 1036. The parties have cited no Texas cases directly in point on the subject, and we have found none. Appellee does cite McAllen v. Wood, Tex.Civ.App., 201 S.W. 433, 435, (wr. ref.) which is somewhat analogous. However, that case involved the appointment of a guardian, a mother who asserted a claim to the entire estate of her minor children. The court said:

"* * * as she claims title to all the estate under instruments which were executed under circumstances raising a question as to their effect and validity, the interest of the minors can only be adequately protected by having them represented by some one who will have the effect and validity of such instruments tested in a court of competent jurisdiction at a time when witnesses are living, and the testimony bearing on the issue is obtainable."

Of course the case may be distinguished on the ground that the State as parens patria has a vital interest in minors and is solicitous for their helpless and dependent status, they being unable to represent themselves. See Thomason v. McGeorge, Tex. Com.App., 285 S.W. 285, (judgment adopted)

Here we entertain no doubt that appellant's interest was such as to render hm "incapable of performing the duties of his trust" within the meaning of the statute, and to justify the court in removing him. He had a direct personal interest in the result of the suit instituted by the bank against him as administrator. If the bank prevailed in that suit he would materially benefit because as a stockholder of the bank he would receive approximately eleven per cent of the assets in his possession, since it appears from the evidence that all the debts of the bank were paid except the expenses of liquidation. It is not a question of bad faith on his part, or of his attitude in favor of or against the claim of the bank. His personal interest in the litigation pending against him as administrator was ample ground for his removal.

The claim of an administrator which he must file with the court properly verified within six months of his appointment, Art. 3526 R.C.S., and from the court's action thereon he is given the right of appeal, Art. 3527, is readily distinguishable. Here the administrator does not deny the estate's title to any property, nor does a secured creditor in asserting or attempting to have classified a secured claim deny such title. If any rights the administrator or secured creditor has in the property of the estate in such cases, such rights are derived through the estate's title. But in the litigation pending when this case was tried, the estate's title to all the property in the possession of the administrator was denied. In that litigation the appellant could only represent himself without embarrassment, he could not represent the estate.

The judgment is affirmed.

FRASER, J., did not participate in the disposition of this case.